# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*City of Bloomington v. Illinois Labor Relations Board, State Panel*, 2011 IL App (4th) 100778

| | |
|---|---|
| Appellate Court Caption | THE CITY OF BLOOMINGTON, Petitioner-Appellant, v. THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL; and THE POLICEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION LABOR COMMITTEE, Respondents-Appellees. |
| District & No. | Fourth District<br>Docket No. 4–10–0778 |
| Filed | June 13, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Illinois Labor Relations Board properly granted respondent police union's motion for attorney fees and costs against petitioner city based on testimony the city presented in a hearing on an unfair-labor-practice charge arising from the failure to promote an officer to the rank of lieutenant that was "without reasonable cause and found to be untrue." |
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, State Panel, No. SCA04120. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Linda M. Doyle (argued) and Monica M. Quinn, both of McDermott Will & Emery LLP, of Chicago, for petitioner. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Eric Truett (argued), Assistant Attorney General, of counsel), for respondent Illinois Labor Relations Board, State Panel. |
| | Joel A. D'Alba and Margaret Angelucci, both of Asher, Gittler & D'Alba, Ltd., of Chicago, for respondent Policemen's Benevolent and Protective Association Labor Committee. |
| Panel | JUSTICE McCULLOUGH delivered the judgment of the court, with opinion. |
| | Presiding Justice Knecht and Justice Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1    The City of Bloomington (City) seeks direct administrative review of a decision of the Illinois Labor Relations Board, State Panel (Board), that granted a motion by The Policemen's Benevolent and Protective Association Labor Committee (Union) for attorney fees and costs against the City. The City argues (1) the Union failed to serve its motion on the City and (2) the Board's award had no basis. *Policemen's Benevolent & Protective Ass'n Labor Committee*, 26 PERI ¶ 99, No. S–CA–04–120 (ILRB State Panel Aug. 27, 2010) (hereinafter 26 PERI ¶ 99). We affirm.

¶ 2    In 2004, the Union filed an unfair-labor-practice charge with the Board, alleging the City violated the Illinois Public Labor Relations Act (Act) (5 ILCS 315/10(a)(1), (a)(2), (a)(4) (West 2002)) by (1) denying Sergeant Paul Williams a promotion to the rank of lieutenant because of his union activity and (2) unilaterally changing promotion procedures. On November 30, 2009, following hearings in the matter, an administrative law judge (ALJ) issued a recommended decision and order. *Policemen's Benevolent & Protective Ass'n Labor Committee*, 26 PERI ¶ 99, No. S–CA–04–120 (Administrative Law Judge's Recommended Decision and Order Nov. 30, 2009), at 404 (hereinafter ALJ decision, 26 PERI ¶ 99). The ALJ agreed, in part, with the Union's position, finding the City's denial of a promotion to Williams was motivated by union animus.

¶ 3    According to the ALJ's decision, the City's police department had a procedure for promoting to the rank of lieutenant that had three elements: a written examination, an

assessment, and the awarding of merit and efficiency points to each candidate by assistant chiefs and current lieutenants. The three elements were evaluated and compiled into a final score that was submitted to the chief of police, Roger Aikin. Aikin then had the discretion to appoint a lieutenant from the three top-scoring candidates. The ALJ found Aikin repeatedly stated to other police department officers that he would promote in rank order unless he had a good reason not to do so.

¶ 4    In 2003, Williams was a candidate for promotion to the rank of lieutenant. The parties stipulated that Williams was a Union member, served as its president and on its negotiation team, and had filed at least one grievance on the Union's behalf. They also agreed that such activity was protected under the Act. With respect to the promotion decision at issue, Williams was the highest-ranking candidate but was passed over by Aikin in favor of a lower-ranking candidate.

¶ 5    The ALJ noted Aikin's only expressed reason for bypassing Williams was the low number of merit and efficiency points he received during the promotion process. The ALJ found the record "devoid" of similar reliance on the number of merit and efficiency points in connection with previous promotion decisions. He specifically referenced a prior instance where the highest-ranking candidate was promoted despite the fact that he also had a lower number of merit and efficiency points than another candidate. The ALJ found Aikin's reliance on low merit and efficiency points was inconsistent and concluded the only apparent difference between Williams, who was passed over, and the previous candidate, who was promoted, was Williams's union activity.

¶ 6    The ALJ's decision that the City was motivated by union animus in bypassing Williams was also based, in part, on Aikin's testimony at the hearing. Specifically, Aikin testified he chose to pass over Williams for the promotion to lieutenant because of Williams's (1) prior refusal to become head of the vice unit, (2) alleged request that a secretary change the minutes of a staff meeting, (3) lack of concern about money spent on binders for investigative documents, and (4) remark to Aikin that Aikin would be "gutted" at a union meeting. The ALJ found Aikin had not previously articulated any of those reasons either at the time of his decision not to promote Williams or during related federal court proceedings. He stated as follows:

"The shifting of Aikin's reasons for his decision points to the conclusion that it was based on union animus. Additionally, the validity of Aikin's asserted reasons are suspect as there is no evidence that Aikin did anything to validate their legitimacy. For example, while Aikin asked and knew Williams did not want the vice unit position he never asked Williams about whether he wanted a promotion to lieutenant. Nor did Aikin talk to [the secretary] or Williams about the meeting minutes incident or check into the additional cost or necessity of the more expensive binders. Additionally, while Aikin denied the 'gutted' remark had an influence on his decision he also admitted he was not happy about it and considered it evidence of disloyalty that supported his decision to deny Williams'[s] promotion." ALJ decision, 26 PERI ¶ 99, at 412.

¶ 7    Neither party filed exceptions to the ALJ's decision. However, on January 4, 2010, the Union filed a motion with the Board for attorney fees and costs against the City pursuant to

section 11(c) of the Act (5 ILCS 315/11(c) (West 2008)) and title 80, section 1220.90(e), of the Illinois Administrative Code (Code) (80 Ill. Adm. Code 1220.90(e) (2010)). It alleged the City made allegations or denials without reasonable cause that were found to be untrue. The Union pointed to formal denials in the City's answer to the Union's charge, as well as Aikin's testimony as to his previously unstated reasons for denying Williams the promotion.

¶ 8     On August 27, 2010, the Board issued its decision in the matter. 26 PERI ¶ 99. It declined to impose sanctions on the City for its answers to the Union's complaint. However, the Board did award the Union attorney fees and costs for Aikin's hearing testimony. The Board stated as follows:

"We are far more troubled by the [City's] assertions raised for the first time during the hearing which were not only found by the ALJ to be untrue (a finding not challenged by the [City]) but so blatantly false that the ALJ found they constituted further evidence of union animus (again, a finding not challenged by the [City]). The [City] had full opportunity to understand its case at this point in time, and may properly be criticized for presenting never-before-offered false alternative reasons for its conduct toward Williams. For this reason, and because the [City] raises no objection, we grant the motion for attorney fees and costs." 26 PERI ¶ 99, at 404.

¶ 9     This appeal followed.

¶ 10    On appeal, the City first argues the Board's decision should be reversed because the Union did not serve its motion for attorney fees and costs on the City. It contends it had no notice that the Union's motion had been filed and no opportunity to respond to the Union's claims.

¶ 11    The Code sets forth requirements for proceedings before the Board. It states unfair-labor-practice charges and other documents must "be served by the party filing the document on all other parties to the proceedings." 80 Ill. Adm. Code 1200.20(e) (2010). "When a party is represented in a proceeding before the Board, service shall be on the party's representative." 80 Ill. Adm. Code 1200.20(e) (2010).

"The document shall not be considered properly served unless accompanied by proof of service. Proof of service shall consist of a written statement, signed by the party effecting service, detailing the name of the party served and the date and manner of service." 80 Ill. Adm. Code 1200.20(e) (2010).

¶ 12    Illinois Supreme Court Rule 11(b)(3) (eff. Dec. 29, 2009) permits service of documents by mail. The Code's procedures for the Board also provide that service of a document by mail "shall be presumed complete 3 days after mailing, if proof of service shows the document was properly addressed." 80 Ill. Adm. Code 1200.30(c) (2010). However, the presumption "may be overcome by the addressee, with evidence establishing that the document was not delivered or was delivered at a later date." 80 Ill. Adm. Code 1200.30(c) (2010).

¶ 13    Here, the record contains evidence that the Union complied with the Code's service requirements. On January 4, 2010, the Union filed its motion for attorney fees and costs. Along with that motion, it filed a notice of its filing and a certificate of service, stating the Union's attorney, Joel D'Alba, served its motion on the City by mailing a copy to the City's

attorney, Linda Doyle. The certificate of service contained all of the information required by the Code, including Doyle's address, the date of the mailing, and D'Alba's signature. On January 5, 2010, the Union filed errata sheets in connection with the previous day's filings to correct typographical errors. Again, it filed a notice of filing and a certificate of service, showing service of its documents by mail on Doyle. This second certificate of service also properly set forth Doyle's address, the date of the mailing, and D'Alba's signature.

¶ 14    Despite evidence that the Union mailed a copy of its motion to the City the same day it was filed, the City claims it was never served and such lack of service provides a basis for reversing the Board's award of sanctions. As evidence that it was not served, the City attached Doyle's affidavit to its notice of appeal. In her affidavit, Doyle asserted she had received the Board's order imposing sanctions, she was the City's attorney, and neither she nor any other counsel had been served with the Union's motion.

¶ 15    The Union correctly states it is improper for this court to consider Doyle's affidavit because it was not part of the administrative record. See 735 ILCS 5/3–110 (West 2008); see also *Burgess v. Board of Fire & Police Commissioners*, 209 Ill. App. 3d 821, 827, 568 N.E.2d 430, 434 (1991) ("It is well established that affidavits which were not made a part of the record in proceedings before the administrative agency may not be considered in an administrative review action."). However, even consideration of Doyle's affidavit would not warrant a finding that the Union failed to serve its motion on the City. Specifically, "[s]ervice by mail is not invalid simply because a party denies receiving it." *Thompson v. Department of Employment Security*, 399 Ill. App. 3d 393, 395, 928 N.E.2d 528, 530 (2010).

¶ 16    In the case at bar, the Union filed a certificate of service with its motion for attorney fees and costs that met the requirements for service as set forth in the Code. The City raises no claim that the certificate of service was deficient. Additionally, not only was a certificate of service filed with the Union's motion, one was also filed the following day with the Union's errata sheets. Notably, the City makes no reference to this second filing, which would also have put it on notice that the Union was asking for sanctions. The City has never disclaimed service of the Union's errata sheets. Given these facts, we find the Union's motion was properly served.

¶ 17    On appeal, the City next argues Aikin's hearing testimony did not provide an appropriate basis for the Board's award of attorney fees and costs. The Act provides for an award of sanctions as follows:

"The Board's order may in its discretion also include an appropriate sanction, based on the Board's rules and regulations, and the sanction may include an order to pay the other party or parties' reasonable expenses including costs and reasonable attorney's fee, *if the other party has made allegations or denials without reasonable cause and found to be untrue* \*\*\*." (Emphasis added.) 5 ILCS 315/11(c) (West 2008).

The Board's rules permit a party to request sanctions from the Board even though it did not move for sanctions before the ALJ and even though the ALJ did not recommend sanctions. 80 Ill. Adm. Code 1220.90(e) (2010). The Board's award of sanctions is subject to an abuse-of-discretion standard of review. *Wood Dale Fire Protection District v. Illinois Labor Relations Board, State Panel*, 395 Ill. App. 3d 523, 535, 916 N.E.2d 1229, 1239 (2009).

¶ 18      Here, the Board granted the Union's motion for sanctions against the City based on Aikin's testimony as to the various reasons he did not promote Williams to lieutenant. At issue was Aikin's testimony that he passed on Williams because of Williams's (1) prior refusal to become head of the vice unit, (2) alleged request that a secretary change the minutes of a staff meeting, (3) lack of concern about money spent on binders for investigative documents, and (4) remark to Aikin that Aikin would be "gutted" at a union meeting. The Board noted Aikin had never before raised those assertions against Williams as a basis for his promotion decision. It also pointed out that the ALJ made the unchallenged finding that Aikin's assertions were untrue and "so blatantly false" that "they constituted further evidence of union animus." The Board determined the City could "properly be criticized for presenting never-before-offered false alternative reasons for its conduct toward Williams." The record shows the Board acted within its discretion in awarding the Union attorney fees and costs.

¶ 19      Initially, we note the Board relied upon the ALJ's findings in reaching its decision. Although, on appeal, the City may properly challenge the Board's decision, it may not challenge the ALJ's findings and decision. In unfair-labor-practice proceedings, a party must file exceptions to an ALJ's decision no later than 30 days after service of that decision. 80 Ill. Adm. Code 1200.135(b)(1) (2010). "A party not filing timely exceptions waives its right to object to the Administrative Law Judge's recommended decision and order." 80 Ill. Adm. Code 1200.135(b)(1) (2010). The City never filed any exceptions to the ALJ's decision.

¶ 20      In support of its challenge to the Board's decision, the City argues Aikin's sanctioned testimony did not constitute "allegations or denials" as required by the Act and the Board's own rules. It maintains sanctions were improperly "based on testimony regarding the witness's state of mind and reasoning in making a promotion decision." However, the word "allegation" means:

"1. The act of declaring something to be true. 2. Something declared or asserted as a matter of fact, esp. in a legal pleading; a party's formal statement of a factual matter as being true or provable, without its having yet been proved." Black's Law Dictionary 81 (8th ed. 2004).

When testifying, Aikin asserted and declared as fact his reasons for failing to promote Williams. His testimony clearly constituted "allegations" that were subject to sanctions.

¶ 21      The City also argues Aikin's testimony was not made "without reasonable cause." It notes the ALJ never made such a finding. However, while the ALJ never expressly stated Aikin's asserted reasons were without reasonable cause, the issue of sanctions was not before the ALJ. Additionally, the ALJ did determine that Aikin's asserted reasons were suspect because he did nothing to validate their legitimacy. The ALJ stated:

"For example, while Aikin asked and knew Williams did not want the vice unit position he never asked Williams about whether he wanted a promotion to lieutenant. Nor did Aikin talk to [the secretary] or Williams about the meeting minutes incident or check into the additional cost or necessity of the more expensive binders." ALJ decision, 26 PERI ¶ 99, at 412.

¶ 22      The record shows Aikin asserted reasons for his decision to pass over Williams that were

never previously articulated and which he did not investigate or substantiate. The Board acted within its discretion in concluding Aikin's allegations were without reasonable cause.

¶ 23    The City also argues the cases cited by the Board do not support an award of sanctions. It contends the cases are distinguishable because (1) the subject of the sanctions in those cases were factual allegations and not state-of-mind testimony and (2) the sanctioned party admitted having no basis for making the allegations. As discussed, Aikin's testimony in this case contained sanctionable allegations of fact and the Board's decision is not reversible on that basis. Also, the Act, Code, or case law imposes no requirement that a party must make an admission of baselessness to be sanctioned. The lack of an express admission by the City in this case does not warrant reversal of the Board's decision.

¶ 24    Finally, we find meritless the City's contention that upholding the Board's decision would create an unacceptable precedent that allows all nonprevailing parties to be sanctioned. The Board's decision in the instant case was based on the specific facts presented. This is not a case where the Board awarded sanctions to punish the City merely for defending itself against the Union's unfair-labor-practice claims.

¶ 25    The record shows the City attempted to support its decision to pass over Williams with reasons that were never previously asserted as a basis for its decision and some of which had never been investigated or established as true. The ALJ determined the City's additional reasons for its promotion decision were not valid and evidence of union animus. The Board did not abuse its discretion by finding the testimony at issue constituted "allegations or denials" made "without reasonable cause and found to be untrue" and awarding sanctions.

¶ 26    For the reasons stated, we affirm the Board's decision.

¶ 27    Affirmed.